**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,     )
     )
     v.     )     Criminal No. 07-258
     )     Judge Nora Barry Fischer
MICHELLE A. LEWIS,     )
     )
     Defendant.     )

## MEMORANDUM OPINION

## I.    INTRODUCTION

Presently before the Court are several pretrial motions filed by both the Government and Defendant Michelle A. Lewis. In this matter, the Government alleges that Defendant unlawfully transported in interstate commerce a security which was converted, stolen or taken by fraud from her former employer in violation of 18 U.S.C. §§ 2314 and 2 by negotiating and depositing a check payable to "A. Lewis Valve" into her personal checking account and that she evaded the payment of income taxes by failing to report that deposit and the deposit of another check as income on her annual income tax return in violation of 26 U.S.C. § 7201. The parties seek pretrial rulings on the admissibility of evidence related to Defendant's prior convictions of mail fraud and filing a false tax return as well as Defendant's motions for a bill of particulars and for pretrial discovery of certain information. Specifically, the Court will address the following motions: (A.) the Government's Motion in Limine for Pretrial Ruling on the Admissibility of Evidence (Docket No. 40); (B.) Defendant's Motion in Limine under Rules 608 and 609 (Docket No. 51); (C.) Defendant's Motion for Bill of Particulars (Docket No. 31); and (D.) Defendant's

Motion for Discovery (Docket No. 32);.[1]  Responses to these motions were timely filed and after

numerous extensions of time, a motion hearing was held on January 29, 2009 during which the

Court heard argument and accepted evidence regarding the pending motions.  After the hearing,

the parties submitted supplemental briefs and further documentary evidence in support of their

respective positions.  The motions are now fully briefed and ripe for disposition.

Upon consideration of the parties' submissions, and based on the following, the Court's

disposition of the pending motions are as follows:  (A) the Government's motion in limine [40]

is GRANTED; (B) the Defendant's motion in limine [51] is DENIED; (C) Defendant's motion

for a bill of particulars is [31] DENIED; and (D) Defendant's motion for discovery [32] is

DENIED, as moot.

## II.     BACKGROUND

### A.     *Instant Indictment*

On July 10, 2007, a grand jury returned a two-count indictment against Defendant,

charging her with interstate transportation of stolen property under 18 U.S.C. §§ 2314 and 2

(Count One) and tax evasion under 26 U.S.C. § 7201 (Count Two).  (Docket No. 2). Specifically,

Count One charges that on or about July 16, 2002 Defendant unlawfully transported, transmitted

and transferred, and caused to be transferred, in interstate commerce from National City Bank in

the states of Pennsylvania and Ohio to Bank of America in Dallas, Texas, a Reliant

---

[1]

The Court notes that on May 1, 2009, the Government filed two motions which are not addressed in this Memorandum Opinion: (1) a motion for pretrial ruling on the admissibility of evidence of regularly conducted business activities under Federal Rule of Evidence 902(11); and (2) a motion in limine to preclude inadmissible hearsay exculpatory evidence. (Docket Nos. 79, 81). Pursuant to the Court's Pretrial Order, Defendant's responses to said motions are due May 11, 2009 and, if necessary, the Court will hear argument regarding same at the pretrial conference currently scheduled for June 5, 2009 at 1:00 p.m.  (Docket No. 60).  Jury selection and trial of this matter are set to commence on June 15, 2009 at 9:30 a.m.  (*Id*.).

Energy/Orion Power Midwest Check No. 30906, dated 6/27/02, in the amount of $25,268.00, payable to "A. Lewis Valve", which Defendant knew had been stolen, converted, and taken by fraud. (Docket No. 2 at 1). Count Two alleges that on or about April 15, 2003 Defendant wilfully attempted to evade and defeat federal income taxes due and owing by her and her spouse by filing a false and fraudulent United States Individual Income Tax Return, Form 1040 for the calendar year of 2002. (Docket No. 2 at 2). It is further alleged that the joint income stated on said return was $156,970.49 and the amount of tax due and owing thereon was $37,696.39, whereas, Defendant well knew and believed that their joint income was $214,610.49 with taxes due and owing of $57,121.57. (*Id*.).

The indictment also contains forfeiture allegations related to the charge at Count One. (Docket No. 2 at 3). The Government seeks forfeiture under 21 U.S.C. § 853(a)(1) of "United States currency, cash equivalents, checks, securities, and bank account balances, constituting the gross proceeds of such violations." (Docket No. 2 at 3). It is further alleged that if by act or omission of Defendant that said property cannot be located by due diligence, it has been sold or deposited to a third person, it has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been co-mingled with other property which cannot be divided without difficulty then other property may be forfeited in lieu of the items listed, pursuant to 21 U.S.C. § 853(p). (Docket No. 2 at 3-4).

B.    *Prior Convictions*

Defendant was previously convicted of similar crimes in which she stole funds from a different employer by preparing false checks, forging endorsements on them and negotiating and depositing them into her personal bank account and then failing to report the proceeds derived from the deposit of these checks on her income tax return. Specifically, on December 14, 2001,

Defendant was charged by way of an information with one count of mail fraud under 18 U.S.C. §

1341, and one count of making and subscribing to a false tax return under 26 U.S.C. § 7206(1).

(Docket No. 57-2). The charges resulted from Defendant's alleged theft of certain funds from

her employer during the period of 1995 through 1999 and then failure to report the income

derived from said funds on her income tax return for the tax year of 1999. (*Id*.). Also on

December 14, 2001, Defendant waived indictment and pled guilty to both charges pursuant to a

plea agreement before the Honorable Gary L. Lancaster. (Docket No. 57-2 at 5). At the waiver

and plea hearing, Judge Lancaster advised Defendant of her rights to be indicted by a grand jury

and to be tried by a jury of her peers. (Crim. No. 01-288, Docket No. 23, *Transcript of Waiver

and Plea Hearing 12/14/2001* ("*Trans. Hr'g 12/14/01*") at 7-8. She was also advised of the

charges in the information and that she faced a total maximum sentence of up to eight years

imprisonment. *Trans. Hr'g 12/14/01* at 10-11. That she faced up to eight years imprisonment

was also reflected in Defendant's plea agreement with the Government, which was dated

September 5, 2001. *Plea Letter 9/5/01* at ¶ (C)(1)(a). Defendant admitted to engaging in the

following conduct regarding those charges, as stated by Assistant United States Attorney Robert

Cessar, Esquire.

> As to Count 1, the Defendant was employed as the supervisor of
> the accounts payable and payroll department for GMS
> Corporation. They provided payroll services and accounts payable
> services for companies owned by Graziano Corporation and Grain
> Corporation.
>
> Beginning in January, 1995, and continuing through November of
> 1999, the Defendant used the US mails to defraud those
> companies. There were basically two methods. One, she will
> prepare Doe checks made payable to company officers and
> vendors. Then there was a signatory stamp that was placed on
> those checks. She would take those checks, forge the endorsement
> of the payee company official, usually take them to the bank and

negotiate them, and use the proceeds from those checks for her own personal expenses.

The other method that was used was that checks would be made payable to her creditors. It was mainly credit card companies. She would again affix her signature stamp on the check. Those checks would then be mailed to her creditors, mostly credit card companies.

That would be the sum and substance of what would establish the Government's case. The mailing element is the mailing of one of those checks from her residence at 114 West End Avenue in Munhall, PA, to Atlanta, Georgia, to a company called First USA Bank. That mailing occurred on or about November 30th, 1999, and it was a Graziano Corporation check payable to First USA Bank in the amount of $1,409. That would be the summary of the evidence in the mail fraud count of the case.

As to the tax case, it's a corollary of the mail fraud. It deals with filing a false tax return on or about March 3rd of the year 2000. The Defendant prepared a 1999 tax return to be filed in 2000. It was a joint return of her and her husband, signed by her under the penalty of perjury.

It was false because it did not disclose the amount of money she had obtained from Graziano Corporation, the illegal income, on that return. And there was approximately -- she reported about $105,839 in income on that return, but failed to report approximately $87,830 in illegally obtained income from Graziano Corporation pursuant to the mail fraud. By not reporting that income, she subscribed and filed a false tax return.

*Trans. Hr'g 12/14/01* at 15-16.  Defendant asserted that she agreed with the prosecution's summary of her conduct, her counsel asserted that her pleas of guilty were consistent with his advice, and Judge Lancaster accepted her guilty pleas and entered a judgment of guilty as to both counts.  *Trans. Hr'd 12/14/01* at 16-17.  Defendant's sentencing was initially scheduled to take place on March 8, 2002.  (Criminal No. 01-288, Docket No. 7).

The pre-sentence report prepared by the Probation Office indicated that Defendant was subject to a mandatory guideline imprisonment range of 24-30 months.  It was provided to both

the Government and defense counsel.[2]   The Government filed its position with respect to sentencing factors on February 5, 2002.  (Criminal No. 01-288, Docket No. 11).  Defendant did not file her position regarding sentencing factors at that time, but instead filed a motion to continue the sentencing date on February 13, 2002.  (Criminal No. 01-299, Docket No. 12).  Said motion was granted by Judge Lancaster and the sentencing date was continued until May 31, 2002.  (Criminal No. 01-299, Text Order, February 19, 2002).  Defendant then filed a second motion to continue the date of sentencing on May 24, 2002.  (Criminal No. 01-299, Docket No. 13).  Judge Lancaster granted this motion as well, continuing the sentencing date to take place on July 17, 2002.  (Criminal No. 01-288, Text Order, May 28, 2002).  Subsequently, Defendant filed a third motion for a continuation of the sentencing date on July 15, 2002.  (Criminal No. 01-288, Docket No. 14). This motion was also granted by Judge Lancaster and the sentencing was rescheduled for September 27, 2002.  (Criminal No. 01-288, Text Order, July 16, 2002).  Defendant then filed a motion for a downward departure on September 20, 2002 to which the Government responded on September 23, 2002.

After the multiple extensions discussed above were granted, the sentencing hearing was rescheduled once more by the Judge Lancaster, and the sentencing hearing was finally held on October 11, 2002.   (Crim. No. 01-288, Docket No. 22, *Transcript of Sentencing Hearing 12/14/2001* ("*Trans. Hr'g 10/11/2002*")).  At the hearing, Judge Lancaster heard argument from counsel as to Defendant's motion for a downward departure.  *Trans. Hr'g 10/11/2002* at 6-10. Judge Lancaster denied Defendant's motion and sentenced her to 24 months incarceration at

---

[2]

        The Court notes that at the time of Defendant's prior conviction and sentencing, the United States Sentencing Guidelines were mandatory as the decision by the Supreme Court of the United States in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), had not yet been issued.

each of counts one and two, with said terms to run concurrently. *Id* at 10-12. At the conclusion

of this term of imprisonment, Defendant was sentenced to a term of three years of supervised

release at count one and one year at count two, with said terms to run concurrently. *Id*. In

addition, Defendant was ordered to pay restitution in the amount of $274,918.78 to GMS

Corporation. *Id*. A fine was not imposed, although Defendant was ordered to pay a $200 special

assessment. *Id*.; *see also* Docket No. 57-3.[3]

    C.    *Government's Factual Allegations as to the Instant Indictment*

As stated, the pending charges against Defendant are one count of interstate

transportation of stolen property under 18 U.S.C. §§ 2314 and 2 (Count One) and one count of

tax evasion under 26 U.S.C. § 7201 (Count Two). This alleged criminal conduct occurred after

Defendant had pled guilty to the prior charges on December 11, 2001 and before she was

ultimately sentenced for same on October 11, 2002. (Docket No. 2). In its motion, the

Government asserts that the following allegations will be proven at trial regarding the pending

charges in the indictment at Criminal Number 07-258.

> On May 20, 2002, the defendant, Michelle Lewis, made, and
> caused to be made, a deposit of Reliant Check number 29435 dated
> 5/16/02 payable to "A. Lewis Valve" in the amount of $29,732.00
> to her account at National City Bank. On July 16, 2002, the
> defendant, Michelle Lewis, made, and caused to be made, a
> deposit of Reliant Check number 30906 dated 6/27/02 payable to
> "A. Lewis Valve" in the amount of $25,268.00 to her account at

---

[3]     The Court notes that on June 12, 2007, the Probation Office filed a Petition on Supervised Release, recommending that the period of supervised release associated with Defendant's case be allowed to expire with restitution due and owing and for the case to be marked closed. (Criminal No. 01-288, Docket No. 20). At that time, the Probation Office indicated that Defendant was released from imprisonment on August 6, 2004 and had paid $4,836.65 towards restitution, which left an outstanding balance of $270,082.13. (*Id*.). Judge Lancaster issued an order on June 19, 2007, permitting the period of supervision to end with said restitution due and owing and the case was marked closed. (Criminal No. 01-288, Docket No. 21).

National City Bank. This check is the subject of Count One of the indictment. The government contends that these checks were issued and negotiated without the consent, authorization, and approval of Reliant Resources. The government contends further that the circumstance of their issuance and negotiation constituted theft, taking by fraud, and conversion. Lewis has given statements disputing this issue saying that they were part of some arrangement to pay her a transition bonus for continuing to work during the transition period during the merger of Orion Power into Reliant Resources. She further asserts that she negotiated the checks under that belief and presumably is disputing whether she knew that the charged check was stolen. Lewis' statements also appear to challenge whether she willfully attempted to evade her tax obligation asserting that she thought a 1099 would be sent to her for this income.

(Docket No. 40 at 5-6).

    D.    *Defendant's Financial Activity During 2002*

At the motion hearing, the Government introduced documentary and testimonial evidence[4] regarding Defendant's financial activity during the time period in which the alleged criminal conduct occurred, i.e., May through July of 2002. After the hearing, Defendant produced additional documentary evidence in rebuttal. (Docket Nos. 74-2, 74-3 and 74-4). Likewise, the Government responded with supplemental evidence of Defendant's finances. (Docket No. 76-2, Govt. Exs. 13-21). For the purpose of resolving this motion, the Court now makes the following factual findings with respect to same.

Three large deposits of funds from Reliant Corporation totaling $67,510.00 were made into a National City Bank account owned by Defendant and her husband during the applicable time period and the Government maintains that two of these deposits were illegally obtained by

---

[4]

    The Government offered the testimony of Special Agent Phillip O'Connor of the Internal Revenue Service, the lead agent involved in the investigation of Defendant. (Docket No. 61 at 34-44).

Defendant. (Docket No. 61 at 37). In the Government's view, the lone legitimate transaction occurred on May 20, 2002, when Defendant received an electronic funds transfer from Reliant in the amount of $12,510. (Docket No. 61 at 38; Govt. Ex. 2). As discussed above, the two allegedly illegitimate transactions totaled $55,000 and are detailed as follows. On the same day she received the electronic funds transfer, May 20, 2002, Defendant deposited a check from Reliant dated May 16, 2002 and payable to "A Lewis Valve" in an amount of $29,732.00. (*Id*.). Then, on July 16, 2002, Defendant deposited another Reliant check payable to "A. Lewis Valve"and dated June 26, 2002 in the amount of $25,268.00. (*Id*.).

Defendant and her husband maintained three types of credit accounts during May, June and July of 2002: (1) a home equity line of credit; (2) a Discover credit card; and (3) a Visa credit card. Over that time period, several large payments totaling $50,742.82 were made from the joint National City checking account to these credit accounts including: (1) $30,000 on the home equity line of credit; (2) $16,842.82 on the Discover credit card; and (3) $3,900 on the Visa credit card. The details of those transactions are the following.

The home equity line of credit with the Auto Workers Federal Credit Union had a credit limit of $50,000. (Docket No. 61 at 36; Govt. Ex. 1). In 2002, the required monthly payment on this account was $977.82 and Defendant normally paid $1,000 per month on this account. (Docket No. 76 at 4; Govt. Ex. 1). The May 2002 statement shows that the account had an outstanding balance of $47,960.67 at the beginning of the period and that, on May 14, 2002, a $1,000 payment was made. (Docket No. 61 at 36; Govt. Ex. 1). Two additional payments in the amount of $10,000 each were made to this account in May of 2002; the first on May 20 and a second on May 29. (*Id*.). Both payments were made from the joint National City account through checks signed by Defendant. (Govt. Exs. 5, 7). A third $10,000 payment was made to

this account on July 26, 2002 and was also paid by a check from the joint National City account signed by Defendant. (Docket No. 61 at 41-2; Govt. Exs. 1, 11). After these payments were made, the line of credit statements reflect that the next payment due on the line of credit was $977.82 on November 20, 2004. (Govt. Exs. 1-3).

Defendant had a $10,000 limit on the Discover credit card and an outstanding balance of over $9,000 in March, April, and May of 2002. (Govt. Exs. 16, 17, 18). The July 2002 credit card statement reflects that there was a previous balance of $9,773.80 on this account but that on June 1, 2002, Defendant made a payment of $9,844.93. (Govt. Ex. 19). This amount was paid from the joint National City checking account by a check dated May 15, 2002. (Docket No. 61 at 40; Govt. Ex. 4). The July 2002 statement shows that Defendant made numerous purchases in June 2002 and had an outstanding balance of $6,997.89. (Govt. Ex. 20). Then on July 22, 2002, a payment of $6,997.89 was made to this account by a check from the joint National City account and signed by Defendant. (Govt. Exs. 10, 21).

Defendant and her husband also maintained a joint Visa credit card account with the Auto Workers Federal Credit Union. (Govt. Exs. 13-15). This account had an outstanding balance of $3,898.18 on the April 2002 statement. (Govt. Ex. 13). The account was not kept current and the May 2002 statement provides that there was an outstanding balance of $3,939.21 and a minimum payment of $836.00 was due immediately. (Govt. Ex. 14). The June 2002 statement reflects that a payment of $3,900 was made on May 29, 2002 and corresponds with a check written in that amount from the joint National City checking account. (Docket No. 61 at 40; Govt. Exs. 6, 15).

While Defendant was incarcerated, from November of 2002 until August of 2004, her husband was able to make minimum payments on the three credit accounts from their joint

National City checking account, despite the loss of Defendant's income. (*See* Def. Ex. A-1:T-4).

Defendant's husband made payments to these accounts, including the Auto Workers Federal

Credit Union home equity line of credit, in various amounts ranging from $100-$300. (*Id*.). As

noted above, in May of 2002 (prior to $30,000 in payments against the home equity line of

credit), the minimum monthly payment on the line was $977.82. (Docket No. 76 at 4; Govt. Ex.

1).

## III.    DISCUSSION

A.    *The Government's Motion in Limine for Pretrial Ruling on the Admissibility of*
      *Evidence [40];*

Pursuant to Rule 404(b) of the Federal Rules of Evidence, the Government "seeks a

pretrial ruling on the admissibility of certain evidence at trial." (Docket No. 40 at 1).

Specifically, the Government seeks to introduce the following "evidence during its case-in-chief

to show knowledge through motive and the existence of a common scheme or plan, to show

absence of mistake or accident, and to show tax due and owing": (1) evidence of a prior bad act

related to the issuance of Reliant Check number 29435 including Defendant's negotiation of

such check on May 20, 2002, facts that are similar to the instant offense but are not charged in

the indictment; and (2) evidence of Defendant's prior conviction for mail fraud and tax evasion

in the Western District of Pennsylvania at Criminal Number 01-288. (Docket No. 40 at 8-10).

In response, Defendant maintains that she "cannot presently object on legal grounds to the

[G]overnment's use of evidence related to an uncharged check (Reliant Check No. 29435)"

however, she "vehemently object[s] ... to the [G]overnment's use of her prior conviction for mail

fraud and subscribing to a false tax return in 2002 (Criminal No. 01-288, W.D. Pa.)." (Docket

No. 49 at ¶¶ 1-2). Accordingly, as Defendant does not contest the admission of the uncharged

check for the purposes set forth by the Government in its motion, the Government's motion is granted to that extent. The Court now addresses the remainder of the Government's motion.

       1.    Legal Standard

Rule 404(b) governs the admissibility of evidence regarding prior crimes, and provides that:

> (b) Other Crimes, Wrongs, or Acts.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...

FED. R. EVID. 404(b). Rule 404(b) bars "the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). The admission of evidence under Rule 404(b) requires consideration of the following: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *United States v. Cruz*, 326 F.3d 392, 395 (3d Cir. 2003)(citing *Huddleston*, 485 U.S. at 691-92). "Admission of bad acts evidence must be carefully scrutinized because, '[a]lthough the government will hardly admit it, the reasons proffered to admit prior-bad-act evidence may often be a Potemkin, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character.'" *United States v. Morena*, 547 F.3d 191, 194 (3d Cir. 2008)(quoting *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir.1992)). However, the United States Court of Appeals for the Third Circuit has held that:

> Rule 404(b) is a rule of inclusion rather than exclusion. *See United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir.1994). We favor the

> admission of evidence of other criminal conduct if such evidence
> is "relevant for any other purpose than to show a mere propensity
> or disposition on the part of the defendant to commit the crime."
> *United States v. Long*, 574 F.2d 761, 765 (3d Cir.1978) (quoting
> *United States v. Stirone*, 262 F.2d 571, 576 (3d Cir.1958), *rev'd on
> other grounds*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)).

*United States v. Givan*, 320 F.3d 452, 460 (3d Cir.2003).

a.     Proper Evidentiary Purpose under Rule 404(b)

"[W]here the evidence only goes to show character, or that the defendant had a propensity to commit the crime, it must be excluded."  *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992).  "[A] proponent's incantation of the proper uses of such evidence under the rule does not magically transform inadmissible evidence into admissible evidence."  *United States v. Williams*, 458 F.3d 312, 319 (3d. Cir. 2006)(quoting *United States v. Morley*, 199 F.3d 129 (3d Cir. 1999)).  "To meet the first requirement and show a proper evidentiary purpose, the [proponent] must 'clearly articulate how that evidence fits into a chain of logical inferences without adverting to a mere propensity to commit a crime now based on the commission of crime then.'"  *Cruz,* 326 F.3d at 395 (quoting *United States v. Mastrangelo*, 172 F.3d 288, 295 (3d Cir.1999)).  "[T]he burden on the government is not onerous. All that is needed is *some* showing of a proper relevance."  *Sampson*, 980 F.2d at 888 (emphasis in original). "Unless the reason is apparent from the record, a mere list of the purposes found in Rule 404(b) is insufficient.  The district court must put a chain of inferences into the record, none of which is the inference that the defendant has propensity to commit this crime."  *Sampson*, 980 F.2d at 888.

The Government sets forth the following four bases for the admission of the prior convictions:

1) Evidence of the impending jail term from the prior conviction should be admitted to demonstrate Lewis' reason and planned involvement in the theft. The impending jail term tells the jury why she needed to take the money and use it pay down her debts. The jury can infer that Lewis anticipated being incarcerated for a term of years on her prior conviction and orchestrated the issuance and negotiation of these unauthorized checks to fund payments on certain debts so that they would not be left to plague her family which would rely in her absence upon one source of income. Her plan and motive, together with her opportunity, are evidence from which the jury can conclude that she stole the checks and therefore knew that the checks were stolen.

2) Evidence of the prior conviction should be admitted to demonstrate her knowledge that she was not permitted to take and negotiate company checks payable to others. The evidence is highly probative of this proposition.

3) Evidence of the prior conviction should be admitted so the jury can determine if she has provided them with a satisfactory innocent explanation for her possession of the stolen checks. The jury should be allowed to use this information to evaluate whether her negotiation of these checks, which were not payable to her, without informing Reliant management was reasonable and consistent with innocence in light of her knowledge that such behavior had just resulted in her conviction of a federal offense. The evidence is highly probative of this proposition.

4) Similarly, evidence of the prior conviction for filing a false return omitting her income from the prior mail fraud should be admitted to demonstrate her knowledge that illegal income must be reported, to demonstrate willfulness in that she deliberately did not take any steps to see that the income was reported after her prior experience of being prosecuted for filing false returns, and to disprove any explanation that she acted out of accident and mistake. The evidence is highly probative of this proposition.

(Docket No. 77 at 1-2; *see also* Docket No. 40). Defendant objects to the Government's proffer, arguing that it is merely an "attempt to put enormously prejudicial information before the jury in the most inflammatory fashion." (Docket No. 49 at ¶ 6).

       i.      <u>Defendant's Motive, Plan or Opportunity Due to Impending Prison Term</u>

With respect to the Government's first theory, that evidence of Defendant's impending prison term including the prior information filed against her, her plea agreement with the Government and her plea colloquy, which all reflect that she faced incarceration, is admissible to prove her motive in committing the instant offenses, Defendant argues that the Government's proffer is improper and that the "connection of the prior conviction to 'motive' is too tenuous and too speculative to have any reasonably probative force." (Docket No. 49 at ¶ 6). Defendant also contends that the Government has not proffered sufficient evidence in support of this theory, including that Defendant "anticipated being incarcerated for a term of years" or had substantial debts. (*Id.* at ¶ 7).

To the extent that the Government argues that said evidence should be admitted based on Defendant's motive, the Court notes that although "not defined in the rule, presumably 'motive' is used in the generally accepted sense of an emotion or state of mind that prompts a person to act in a particular way; an incentive for certain volitional activity." WRIGHT & GRAHAM, 22 FEDERAL PRACTICE AND PROCEDURE § 5240 (2008). Moreover, "motive is not an ultimate issue; therefore, proof of motive must always be directed at some other fact that is an ultimate issue in the case. Evidence of motive may be offered to prove that the act was committed, or to prove the identity of the actor, or to prove the requisite mental state." *Id.* The Government's motive theory rests on its burden to prove that the security in question, the Reliant check, was stolen, converted, or taken by fraud. *See* 18 U.S.C. § 2314. As discussed above, Defendant does not object to the admission of the evidence regarding the uncharged Reliant check by the Government to establish that Defendant engaged in a common scheme or plan to steal the two checks from Reliant.

In this Court's estimation, a logical chain of inferences regarding Defendant's motive in engaging in a common scheme or plan to convert, steal or take by fraud two Reliant checks payable to "A. Lewis Valve" to pay off her substantial debts in short order due to her prior mail fraud conviction and impending term of imprisonment can be supported based on this record. The indictment alleges that Defendant transported a security in interstate commerce that she knew was stolen, converted or taken by fraud, negotiating the Reliant checks and depositing them into her personal bank account and that she failed to report the proceeds of these transactions on her tax return for 2002. (Docket No. 2). When these events occurred, Defendant had already pled guilty to committing the federal offenses of mail fraud and filing a false tax return and was awaiting sentencing. The Government asserts that it will prove at trial that Defendant had substantial debts and has presented sufficient documentary and testimonial evidence to this Court in support of this theory at the motion hearing. (Docket No. 61 at 33-45; Govt. Exs. 1-21). The Government offered evidence which suggests that Defendant and her husband paid down debts of approximately $50,000 during May, June and July of 2002 and that, but for Defendant's deposit of the two checks the Government alleges were converted, which totaled approximately $55,000, these debts could not have been paid by Defendant. (*See generally* Docket No. 61). This finding is further supported by the evidence submitted by Defendant. For example, that evidence demonstrates that Defendant's spouse made payments of approximately $300 per month on the Auto Workers Federal Credit Union line of credit during the two years that she was incarcerated, in contrast to payments of approximately $1,000 per month prior to the deposits of the allegedly stolen or converted funds by Defendant into the joint National City account and $30,000 of payments to the line of credit in 2002.

That Defendant incurred substantial debts is clearly probative of motive, and she does not contest the same, conceding that "[s]uch evidence would likely survive a Rule 404(b) objection, and assuming that the nature of such evidence is not unduly prejudicial, survive any Rule 403 scrutiny as well." (Docket No. 49 at ¶ 7). Likewise, Defendant's alleged motive for committing the fraud is enhanced by her anticipated prison term, as evidenced by her plea agreement with the Government as well as Judge Lancaster advising her during the plea colloquy that she faced up to eight years imprisonment and the pre-sentence report which stated that she faced 24-30 months imprisonment under the then mandatory United States Sentencing Guidelines, events which all occurred prior to May of 2002. In her pleading, Defendant claims that she was unaware that she was in fact likely to be sentenced to a term of imprisonment until October 9, 2002 and that this fact therefore had no bearing on her state of mind regarding the negotiation of the Reliant checks in May and July of 2002. (Docket No. 74 at 2). However, this assertion by Defendant creates nothing more than a factual issue to be resolved by the jury in this case as to a contested issue and does not foreclose the Government from attempting to establish the same at trial. In sum, the Government's theory that Defendant's motive to engage in a scheme or plan to steal, convert or take by fraud the Reliant checks in question is supported by evidence of Defendant and her family's substantial debts and her pending incarceration. Therefore, this evidence has been proffered for a proper purpose under Rule 404(b).

ii.     Knowledge/Lack of Innocence, Mistake or Accident

The Government also seeks to admit evidence of Defendant's prior conviction of mail fraud wherein she prepared company checks payable to others, forged endorsements on the checks and deposited same into her bank account. (Docket No. 40). The Government argues that this evidence demonstrates that Defendant had knowledge that she was not permitted to take

and negotiate checks endorsed to others regarding the charges in the instant indictment and that Defendant has not proffered a sufficient innocent explanation for her possession of the checks. (*Id.*). In response, Defendant maintains that this evidence is sought to be admitted for an improper purpose, arguing that she does not contest that she has knowledge that it is illegal to steal from one's employer. (Docket No. 49 at 9).

Defendant is charged with a violation of 18 U.S.C. § 2314, which provides that "[w]hoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud ..." shall be subject to the penalties set forth therein. 18 U.S.C. § 2314. The Government is therefore required to prove that Defendant had knowledge that the security in question was stolen, converted or taken by fraud. *See United States v. Wright*, 363 F.3d 237 (3d Cir. 2004). The Government argues that knowledge under section 2314 may be proven at trial inferentially "from a showing that the defendant recently possessed property that was stolen, taken by fraud, or converted without an explanation of that possession consistent with innocence that is satisfactory to the jury" or directly from a showing "that the defendant knew [that the] property [ ] was stolen, taken by fraud, or converted because the defendant orchestrated the theft, taking by fraud, and conversion of the property." (Docket No. 40 at 6-7).

The Government's argument relies on its ability to prove knowledge circumstantially, specifically, that "[t]he jury should be permitted to consider this evidence to determine if she has provided them with a satisfactory innocent explanation for her possession of the stolen checks" and "[t]he jury should be allowed to use this information to evaluate whether her negotiation of these checks, which were not payable to her, without informing Reliant management was

reasonable and consistent with innocence in light of her knowledge that such behavior had just resulted in her conviction of a federal offense." (Docket No. 40 at 13). As discussed above, Defendant argues that she does not dispute the elementary understanding that stealing from her employer is illegal.

Evidence of a criminal defendant's commission of a prior crime is admissible to show knowledge in the present case if the jury can reasonably infer from a fact learned in the prior crime that the requisite knowledge required to commit the current crime is present. *See* FED.R.EVID. 404(b). However, in a crime such as mail fraud which potentially involves varying factual scenarios, a court must exercise greater caution to show a basis of factual similarity prior to admitting evidence of a prior conviction to demonstrate that a defendant had the requisite state of mind in a subsequent crime. *See United States v. Klein*, 515 F.2d 751, 755 n.14 (3d Cir. 1975).[5] The facts which led to Defendant's prior mail fraud conviction are strikingly similar to the facts of this case. In the prior case, Defendant was convicted of preparing checks from her former employer to several payees, forging the payees' endorsements on the checks and negotiating and depositing the same into her personal bank account. As a result of this

---

[5]

In *United States v. Klein,* the United States Court of Appeals for the Third Circuit noted while discussing the applicability of Rule 404(b) that:

> Where prior crimes, like mail fraud and conspiracy are put into evidence ... the traditional rule of evidence is much more difficult to apply. These crimes can arise in so many different factual contexts, that no rule can be stated as to what knowledge a prior conviction will give. As such, greater caution must be exercised to show a basis of factual similarity before prior conviction for offenses like mail fraud and conspiracy are admitted to show state of mind in a subsequent crime.

515 F.2d 751, 757 n.14 (3d Cir. 1975).

conviction, Defendant has knowledge that engaging in the stated conduct constituted illegal conduct and that the checks themselves were fraudulently obtained. Likewise, in this case, Defendant is charged with knowingly transporting stolen securities in interstate commerce and the Government has the burden to prove that Defendant had knowledge that the Reliant check was stolen, converted or fraudulently taken. In this Court's estimation, it is reasonable to infer from Defendant's knowledge derived from the facts and circumstances resulting in a conviction of fraudulent conduct in the prior circumstances that she had knowledge that the checks that are the subject of the pending charges were fraudulently obtained, stolen or converted.

Given the similarity between the facts that led to the prior conviction and the allegations in the instant indictment, the Court finds that said evidence is proffered for a proper purpose under Rule 404(b) as the prior conviction evidence is probative of Defendant's knowledge regarding whether the Reliant checks payable to "A. Lewis Valve" that she deposited in her account were stolen, converted, or taken by fraud. Moreover, to the extent that Defendant offers an innocent explanation for her possession and negotiation of the checks at trial, such as, that she received the checks as part of a bonus from Reliant, the prior conviction evidence would be admissible to rebut Defendant's assertions.[6] *United States v. Lopez*, 340 F.3d 169, 174 (3d Cir. 2003)(citing cases)(permitting use of prior conviction as 404(b) evidence to rebut the "defendant's anticipated claim of innocent association with, and lack of knowledge of" the charged drugs). Finally, as discussed in further detail below, Defendant's partial stipulation that

---

[6]

The Court will address the use of prior convictions for impeachment purposes in section III(B) *infra*.

To the extent that Defendant herself offers an innocent explanation on direct examination, her cross-examination may include matters affecting her credibility. FED R. EVID. 611(b).

she does not contest that stealing from her employer is illegal is not sufficient to prevent the admission of the facts related to her prior conviction by the Government for the purpose of showing Defendant's knowledge.

### iii.     Wilfulness Regarding the Tax Evasion Charge

The Government also seeks to admit evidence of Defendant's prior conviction for filing a false tax return as probative of Defendant's knowledge and wilfulness in failing to report the gains derived from the Reliant checks as income on her tax returns.  Defendant again objects to same.  Defendant is charged with tax evasion in violation of 26 U.S.C. § 7201, which provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall" be subject to the penalties subscribed therein.  26 U.S.C. § 7201.  "Willfully" in this context is defined as "the voluntary, intentional violation of a known legal duty."  *Cheek v. United States*,  498 U.S. 192, 201 (1991).  At trial, the Government will be required to prove that Defendant had knowledge that it was necessary to report the allegedly illegal gains as income on her tax return.  *Id.*; *see also United States v. McGill*, 964 F.2d 222, 229 (3d Cir. 1992)("The elements of the felony of attempted evasion of payment of tax under § 7201 are three: 1) the existence of a tax deficiency; 2) an affirmative act constituting an attempt to evade or defeat payment of the tax; 3) willfulness.").

With respect to the tax evasion charge, "[a] defendant's past taxpaying record is admissible to prove willfulness circumstantially." *United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006).  In addition, a defendant's prior tax non-compliance is admissible under Rule 404(b) where the Government must "make a showing of intent or willfulness to meet its burden of proof."  *Daraio*, 445 F.3d at 264. The record supports a finding that Defendant's prior conviction is admissible to prove that she had knowledge that any gains from the deposit of the

Reliant checks in question were taxable and reportable on her United States Joint Income Tax Return, Form 1040. *See* 26 U.S.C. 7206. In addition, the prior conviction is also admissible to show Defendant's lack of accident or mistake in failing to report the gains on her tax returns. *See* FED.R.EVID. 404(b); *see also United States v. Givan*, 320 F.3d 452, 460-61 (3d Cir. 2003); *United States v.Daraio*, 445 F.3d 253, 263-66 (3d Cir. 2006).

### b.     Relevance of Evidence

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Moreover, Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." FED. R. EVID. 402. Further, "inquiries of relevance and proper purpose are intimately intertwined. Evidence that is not relevant, by definition, cannot be offered for a proper purpose, and evidence that may be relevant for some purposes may be irrelevant for the purpose for which it is offered." *Morley*, 199 F.3d at 133. Upon consideration of this standard, the Court finds that the evidence proffered by the Government discussed above is relevant to prove the purposes articulated in its motion.

### c.     Balancing Test Under Rule 403

If the Court determines that the evidence is proffered for a proper purpose under 404(b) and relevant under Rule 402, the Court must then evaluate the evidence under Rule 403. Rule 403 provides that: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

of cumulative evidence." Fed. R. Evid. 403. "It creates a presumption of admissibility." *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002)(citing *United States v. Universal Rehabilitation Serv. (PA), Inc.*, 205 F.3d 657, 664 (3d Cir.2000) (en banc)). "A trial judge [...] may exclude logically relevant other crimes evidence if its probative value is substantially outweighed by the risk of undue prejudice. In making this determination, the trial judge must appraise the genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds." *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988)(citing *United States v. Cook*, 538 F.2d 1000, 1003 (3d Cir. 1976)). Moreover, "when evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *Cross*, 308 F.3d at 323. This Court is granted considerable discretion in evaluating evidence under Rule 403. *See Sampson*, 980 F.2d at 889 ("When a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling.").

In addition,

> district courts should generally deem prior bad acts evidence inadmissible to prove an issue that the defendant makes clear he is not contesting. The relevance of the prior bad acts evidence will be minimal in most such cases, since the evidence will not bear on the issues being contested. And the undue prejudice will be quite high, since prior bad acts evidence tends to be quite persuasive.

*Jemal*, 26 F.3d at 1274. Any proffer to stipulate by Defendant in this regard "must be comprehensive and unreserved, completely eliminating the government's need to prove the point it would otherwise try to establish using 404(b) evidence" but "even if the defendant is unwilling to make sufficient concessions to completely remove an issue from the case, the district court

should weigh prejudice against probative value only after taking into account the defendant's 'partial' stipulation." *Id*. at 1274-75.

Defendant argues that she will be unfairly prejudiced by the admission of her prior convictions at trial if admitted in the manner proposed by the Government.   (Docket No. 49). She argues that the purported evidence shows merely that she has a propensity to engage in the criminal conduct charged in the instant indictment and that the prior convictions are highly prejudicial.  (*Id*.).  As discussed in detail above, the Court disagrees and has found that the evidence is proffered by the Government for proper purposes under Rule 404(b), none of which involve Defendant's propensity to commit the crimes charged.  The Court also finds that the prejudice to the Defendant does not substantially outweigh the probative value of the evidence on any of the articulated grounds and that any risk of prejudice to Defendant that she be convicted on improper grounds can be eliminated by a carefully crafted limiting instruction.  The Court so holds for the following reasons.

With respect to the proffered evidence of the pending term of incarceration, Defendant argues that the Government's need for the introduction of same is minimal as the Government can prove its motive theory, i.e., that Defendant stole the Reliant checks to pay down substantial debts without resorting to introducing such evidence.  (Docket No. 49).  While the Court agrees that the Government could prove its motive without offering evidence of the pending incarceration, in this Court's estimation, the pending incarceration and the timing of the alleged criminal activity after Defendant's guilty pleas and prior to her sentencing are highly probative of her motive in engaging in the common plan or scheme to steal, convert or take by fraud the Reliant checks which resulted in the pending charges.  This is not propensity evidence, but evidence of the precise facts and circumstances surrounding Defendant's actions in this case.

Defendant also maintains that admission of the prior mail fraud conviction is not necessary as she does not contest that she has knowledge that stealing from ones employer is illegal. (Docket No. 49 at ¶ 9). At best, this is a partial stipulation regarding Defendant's knowledge and not a "comprehensive and unreserved" stipulation which would completely eliminate the Government's need to prove this element at trial. *See Jemal*, 26 F.3d at 1274-75. Even considering this partial stipulation, the Government has the burden at trial to prove that Defendant had knowledge that the Reliant check payable to "A. Lewis Valve" which she possessed and then deposited into her personal bank account was converted, stolen or taken by fraud. The fact that Defendant was convicted of mail fraud for engaging in similar conduct is probative of her knowledge of the nature of the check in this case. Similarly, with respect to the tax evasion count, the fact that she was previously convicted of filing a false tax return for failing to report income derived from negotiating and depositing checks from her employer not payable to her and failing to report such income is highly probative of wilfulness. Moreover, to the extent that Defendant contends at trial that her conduct was innocent, or the result of an accident or mistake, the prior convictions are highly probative to rebut these assertions.

Given that the prior conviction evidence proffered by the Government is not offered to demonstrate the propensity of Defendant to engage in criminal conduct, but for proper purposes, and that the evidence is highly probative of these purposes, the Court finds that any prejudice to Defendant does not "substantially outweigh" the probative value of this evidence. *See* Fed.R.Evid. 403; *see also Cross*, 308 F.3d at 323 ("when evidence is highly probative, even a large risk of unfair prejudice may be tolerable"). Accordingly, the Court will permit the introduction of such evidence by the Government and will instruct the jury to consider same only for the purposes stated in Rule 404(b). *See* Fed.R.Evid. 404(b).

d.    Conclusion

Based on the above stated reasons, the Government's motion [40] is GRANTED. Specifically, the Court rules as follows: (1) evidence of the uncharged check is admissible to prove common scheme or plan in conjunction with the check charged at Count One; (2) evidence of Defendant's substantial debts and her impending jail term is relevant to prove Defendant's motive in engaging in a plan to steal, convert or fraudulently take the two checks from Reliant; (3) evidence of the prior mail fraud conviction is admissible to prove that Defendant had knowledge that the Reliant checks were stolen, converted or taken by fraud and to rebut any claim that Defendant's possession of same was innocent; and (4) evidence of the prior conviction for filing a false tax return is admissible to prove that Defendant acted wilfully in failing to report as income the proceeds derived from the Reliant checks on her joint income tax return.

Finally, to the extent that this evidence is admitted at trial for one of the purposes set forth in Rule 404(b), the jury must be given a limiting instruction that the evidence is to be considered only for that purpose.  Accordingly, in conjunction with the issuance of this Memorandum Opinion, the Court orders the parties to meet and confer to develop joint proposed limiting instructions on these issues and, if necessary, the Court will resolve any disputes regarding same at the pretrial conference.

B.    *Defendant's Motion in Limine Under Rules 608 and 609* [51]

In this motion, Defendant seeks a "ruling on whether her prior convictions and conduct for mail fraud and subscribing to a false tax return is [sic] admissible as impeachment under Rules 608 and 609 of the Federal Rules of Evidence in the event that she decides to testify at trial."  (Docket No. 51 at 1).  Defendant maintains that evidence of her prior conviction should

be precluded by the Court under Rules 608 and 609 as the prejudicial effect of such evidence outweighs its probative value. (*Id.*). Defendant also asserts that despite the mandatory language of Rule 609(a)(2) that such evidence "shall be admitted," this Court can exercise its discretion and engage in the balancing test under Rule 403. (Docket No. 61 at 62-63). In response, the Government states that it will seek to enter evidence of Defendant's prior conviction at trial if she puts her credibility in issue. (Docket No. 57 at 3). The Government further contends that her convictions of mail fraud and filing a false tax return are offenses that involve dishonesty or the making of a false statement, and that pursuant to Rule 609(a)(2), the conviction is admissible for the purpose of attacking Defendant's credibility, without necessitating a balancing of the prejudicial effect of said evidence versus the probative value of same. (Docket No. 57 at 1). Finally, the Government asserts that it intends to offer as a specific instance of Defendant's conduct for untruthfulness that she forged the endorsements of the checks of others, as admitted during her plea colloquy before Judge Lancaster that resulted in her prior conviction for mail fraud. (Docket No. 57 at 6-7).

Rule 608(b) of the Federal Rules of Evidence generally governs the admissibility of evidence attacking or supporting a witness' character for truthfulness, and provides that:

> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, <u>other than conviction of crime as provided in rule 609</u>, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
>
> The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege

against self-incrimination when examined with respect to matters that relate only to character for truthfulness.

Fed. R. Evid. 608(b)(emphasis added).  As stated in Rule 608, the admissibility of evidence of a witness's prior criminal conviction for the use of attacking the character for truthfulness of a witness is codified in Rule 609 of the Federal Rules of Evidence.  Rule 609 provides that:

(a) General rule.--For the purpose of attacking the character for truthfulness of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

Fed. R. Evid. 609(a).

The United States Court of Appeals for the Third Circuit has held that "Rule 609(a) differentiates on its face between convictions for crimes punishable by imprisonment of more than one year, which are admissible under 609(a)(1), and convictions for *crimen falsi*, which are admissible under 609(a)(2). The former may be admitted only if the trial court determines that their probative value outweighs their prejudicial effect. The latter simply 'shall be admitted.'" *United States v. Wong*, 703 F.2d 65, 67 (3d Cir. 1983).  Further, "if the prior conviction involved dishonesty or false statements, the conviction is automatically admissible insofar as the district court is without discretion to weigh the prejudicial effect of the proffered evidence against its probative value." *Walker v. Horn*, 385 F.3d 321, 333 (3d Cir. 2004) (quoting *Walden v.*

*Georgia-Pacific Corp.*, 126 F.3d 506, 523 (3d Cir.1997)). "Because Rule 609(a)(2) does not permit the district court to engage in balancing, ... Rule 609(a)(2) must be construed narrowly to apply only to those crimes that bear on a witness' propensity to testify truthfully." *Id*.

The threshold issue before this Court is whether Defendant's prior convictions constitute *crimen falsi* crimes. As correctly argued by the Government, in *Wong*, the Court of Appeals upheld the district court's finding that a conviction of mail fraud under 18 U.S.C. § 1341 constituted a *crimen falsi* crime, making Rule 609(a)(2) applicable and permitting the admission of Defendant's prior conviction without engaging in a Rule 403 balancing. *Wong*, 703 F.2d at 67. Accordingly, Defendant's mail fraud conviction at Criminal No. 01-288 in which she converted checks from her former employer by forging endorsements on said checks and used the proceeds to pay off her own debts, is undoubtedly a *crimen falsi* crime. Therefore, evidence of her conviction on this charge is admissible for impeachment purposes under Rule 609(a)(2), should she put her credibility for truthfulness in issue.

The Government also seeks to admit evidence of her prior conviction under 26 U.S.C. § 7206(1) for filing a false tax return. The Government argues that the conviction under section 7206(1) constitutes a *crimen falsi* crime and that Rule 609(a)(2) is applicable to the admission of that conviction for impeachment purposes. Defendant's argument is general in nature and does not address the specific issue of whether the criminal conviction under section 7206(1) constitutes a *crimen falsi* crime.

Section 7206(1) provides that "[a]ny person who -- [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter" shall be punished as set forth in that section. 26 U.S.C. § 7206(1). In

*United States v. Gollapudi*, the United States Court of Appeals for the Third Circuit set forth the

elements that the government is required to prove for a conviction under section 7206(1), that:

> (1) defendant made and subscribed a return which was false as to a material matter; (2) the return contained a written declaration that it was made under the penalties of perjury; (3) defendant did not believe the return was true and correct as to every material matter; and (4) defendant falsely subscribed to the return willfully, with the specific intent to violate the law.

*United States v. Gollapudi*, 130 F.3d 66, 71 -72 (3d Cir. 1997)(citing *United States v. Bishop*,

412 U.S. 346, 350 (1973)). Further, "the standard for the statutory willfulness requirement is the

voluntary, intentional violation of a known legal duty." *Cheek*, 498 U.S. at 201.

While there is no decision of the United States Court of Appeals for the Third Circuit

directly analyzing whether a conviction under section 7206(1) is admissible for impeachment

purposes under Rule 609(a)(2), the Court finds persuasive a non-precedential opinion of the

Court of Appeals for the Fourth Circuit which permitted the introduction of the use of a prior

conviction under section 7206(1) for impeachment purposes, *see United States v. Lapteff*, 160

Fed.Appx. 298, 303-304 (4th Cir. Dec. 28, 2005)(non-precedential)(holding that the

"defendant's prior felony conviction for filing a false tax return, a violation of 26 U.S.C. §

7206(1), is for a crime involving dishonesty or false statement."); and two district court

decisions holding the same, *see United States v. Libutti*, Crim. A. No. 92-611, 1994 WL 774644,

at *21-22 (D.N.J. Sept. 6, 1994)(finding no error in the district court's earlier decision which

denied defendant's motion in limine to preclude the admission of a prior conviction under

section 7206(1)); *see also Hardin v. MoKan St. Louis Const. Contractors Assistance Center*, No.

4:06CV01711 ERW, 2008 WL 3539052, at *2 (E.D. Mo. August 11, 2008)(denying defendant's

motion in limine to preclude conviction of filing a false tax return for impeachment purposes).

Moreover, at the plea hearing for her conviction at Criminal No. 01-288, Defendant admitted that she subscribed to a false tax return which "was false because it did not disclose the amount of money she had obtained from Graziano Corporation" and that she did not "report approximately $87,830 in illegally obtained income from Graziano Corporation pursuant to the mail fraud." *Trans. Hr'g 12/14/01* at 16.

Given that Defendant admitted to wilfully subscribing to a false tax return, the Court finds that Defendant's prior conviction for filing a false tax return in violation of 26 U.S.C. § 7206(1) constitutes a *crimen falsi* crime. Accordingly, Rule 609(a)(2) is applicable and the Court is not authorized to engage in the balancing test under Rule 403. Therefore, Defendant's motion in limine to preclude the use of her prior convictions by the Government to impeach her credibility for truthfulness is DENIED.

C. *Defendant's Motion for Bill of Particulars* [31];

1. <u>Legal Standard</u>

Rule 7(f) of the Federal Rules of Criminal Procedure governs a criminal defendant's request for a bill of particulars and provides that:

> [t]he court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

FED R. CRIM. P. 7(f). "A bill of particulars is a 'formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor [.]'" *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005)(quoting BLACK'S LAW DICTIONARY 177 (8th ed. 2004)). The purpose of a bill of particulars is to ensure that a defendant has enough information to adequately prepare a defense, and is warranted when the information contained in an indictment is too vague or indefinite to

allow such preparation. *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971), *cert. denied*, 405 U.S. 936 (1972).

A bill of particulars is akin to an indictment in that both are designed to limit the government's case. *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985). It is not designed, however, to provide a defendant with the "fruits of the government's case." *Id.* Therefore, a defendant may not use a bill of particulars as a wholesale discovery tool, though a defendant may not be denied legitimate information simply because that information would divulge government witnesses or details of the government's evidence. *Addonizio*, 451 F.2d at 64. However, where a defendant has access to information being relied upon by the government to construct its case, the case for granting a bill of particulars is significantly weakened. *Urban*, 404 F.3d at 772 (3d Cir. 2005).

Granting a motion for a bill of particulars is a discretionary matter for this Court. *Id.* The Court is to "balance the defendant's interest in securing information concerning the government's case [with] other countervailing considerations which may result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so." *United States v. Rosa*, 891 F.2d 1063, 1067 (3d Cir. 1989). A bill of particulars should be ordered where the indictment "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *Id.* at 1066. An indictment is considered sufficient if it substantially follows the language of the criminal statute, so long as it is not too general as to prejudice a defendant in preparing his defense or endanger his constitutional guarantee against double jeopardy. *United States v. Eufrasio*, 935 F.2d 553, 575 (3d Cir. 1991).

      2.     <u>Count One</u>

Defendant first "seeks particulars of how the check was transported and by whom, the identification of who was the principal and who the aider and abettor, as well as particulars of their respective roles." (Docket No. 31 at ¶ 2). In response, the Government contends this is not a proper request for a bill of particulars and that the indictment need not allege who was the principal, or aider and abettor and that it is not required to "prove how the check was transmitted in interstate commerce." (Docket No. 36 at 4-5). The Government further maintains that the charges contained in the indictment, in conjunction with the discovery provided is sufficient to notify Defendant of the charges against her and to allow her to adequately prepare her defense. Specifically, the Government states that:

> In addition to the indictment itself, copies of documents will be forwarded separately to counsel for Lewis from this response, most of which were previously examined by counsel. These documents included copies of the check in the count and an additional check with bank markings for processing. Copies of documents consisting of the computer data were provided showing the accounting entries setting up the issuance of the checks. Copies of bank records of the deposit of those checks into Lewis' bank account were also provided. A copy of a memorandum of statements of Lewis was provided affirming that she was the person who wrote the deposit tickets for the deposit of these out of state checks. When considered together with the indictment, this discovery evidence provides Lewis more than sufficient notice of the nature of the offense.

(Docket No. 36 at 6-7). The Government's position that Defendant is not entitled to a bill of particulars is further supported by the Government's motion in limine at Docket No. 40, which contains a fairly comprehensive statement of the Government's evidence against Defendant. (*See* Docket No. 40). This statement of the evidence includes that it was Defendant who negotiated the check at issue as to the mail fraud charges and that the Government intends to demonstrate at trial by other evidence that she was the person who made the accounting entries regarding the

issuance of the check, and that she had the opportunity to do so as she worked alone. (*Id.*). In addition, the Government provided further argument and witness testimony during the motion hearing which disclosed much of its evidence that it will present at trial against Defendant. (Docket No. 61 at 33-45). Accordingly, given this discovery and the Government's further disclosures,[7] the Court finds that Defendant's request for a bill of particulars as to this issue is denied.

Defendant also "seeks particulars of whether the security was 'stolen' or 'converted' or 'taken by fraud.'" (Docket No. 31 at ¶ 2). The Government maintains that it

> properly charged conjunctively the status of the security because the [sic] all three of the specified circumstances appear to be applicable in this case where Lewis obtained, and deposited into her own bank account, two unauthorized checks, payable to a party other than her, which was issued based upon accounting entries for an unknown vendor company and for fictitious purchases. We are not aware of any law saying that we must elect between them.

(Docket No. 36 at 7). Again, given the discovery which took place in this matter, and considering the Government's disclosures in conjunction with its motion in limine, a bill of particulars as to this issue is not warranted.

### 3. Count Two - Particulars as to Affirmative Acts of Evasion Not Charged in the Indictment

Defendant also "seeks particulars of the government's assertion of any 'affirmative acts of evasion' not charged in the indictment, *see*, *Sansone v. United States*, 380 U.S. 343, 351-52 (1965) and *Spies v. United States*, 317 U.S. 492, 497 (1943)." In response, the Government contends that "[t]his simply is an improper discovery request. It does not seek to clarify the

---

[7]

*See* Discussion, section III(D) *infra*.

34

indictment at all." (Docket No. 36 at 9). The Government then argues that the affirmative act of evasion is set forth in the indictment, the filing of the joint income tax return on April 15, 2003. (*Id*. at 10).

As this Court recently discussed in *United States v. Manfredi*, 26 U.S.C. § 7201 permits the government to charge tax evasion in several different factual scenarios including: by filing a return for a discrete period; upon the commission of a discrete act of evasion which encompasses more than one period *see United States v. Pollen*, 978 F.2d 78 (3d Cir. 1992); or, a single count of tax evasion that encompasses more than one period that constitutes a continuing course of conduct, *United States v. Root*, 560 F.Supp 2d 402, 415 (E.D. Pa. 2008). The Government has asserted and the indictment provides that the affirmative act of evasion in this case is the filing of the tax return. (Docket No. 2). Accordingly, given the Government's assertion that it is prosecuting Defendant for the filing of a single tax return, Defendant's motion in this regard is denied, as moot. Moreover, given the discovery and disclosures made by the Government, it is clear that the tax evasion charge derives from two alleged acts by Defendant: the conversion of the check charged in Count One, and the conversion of an uncharged check on May 20, 2002, which is also discussed in the Government's motion in limine (Docket No. 40).

4.      Conclusion as to Motion for Bill of Particulars

Based on the foregoing, Defendant's motion for a bill of particulars [31] is DENIED.

D.      *Defendant's Motion for Discovery* [32];

Defendant has also filed a motion for discovery of certain materials pursuant to Rule 16 of the Federal Rules of Criminal Procedure. (Docket No. 32). The Government responded to said motion and has supplied additional information to Defendant, as evidenced by the filing of several Supplemental Receipts for Local Criminal Rule 16.1 Materials. (*See* Docket Nos. 39, 42,

56).  During the motion hearing, counsel advised the Court of the nature of the discovery requested by Defendant and the problems encountered by defense counsel and his staff as the requested information required the recovery of electronically stored information from a computer database and the need for computer experts to analyze same.  (*See* Docket No. 61). Defendant also requested that the Government produce additional electronically stored information.  (*Id.*).  After the hearing, the Court conducted two telephone conferences with counsel, who ultimately reported that the Government fully cooperated with Defendant and produced all requested information.  (Docket Nos. 64, 69).

In addition, to the extent that Defendant seeks information under *Brady*, the Jencks Act, impeachment materials, or Rule 404(b) evidence that was not disclosed by the Government in its motion in limine (discussed above), the Court has ordered that the Government produce these materials to Defendant pursuant to the deadlines set forth in the Court's Pretrial Order issued on February 4, 2009.  (Docket No. 60).  Accordingly, as the parties have resolved their discovery disputes, and the Court has ordered production of all other requested materials, Defendant's motion for discovery [32] is DENIED, as moot.

IV.     **CONCLUSION**

Based on the foregoing, the Court's disposition of the pending motions are as follows:

(A) the Government's motion in limine [40] is GRANTED;

(B) Defendant's motion in limine [51] is DENIED;

(C) Defendant's motion for a bill of particulars is [31] DENIED; and

(D) Defendant's motion for discovery [32] is DENIED, as moot.

The parties through counsel are further ordered to meet and confer on a proposed limiting instruction pursuant to this opinion on or before June 1, 2009, and submit said limiting

instruction to the Court on or before June 8, 2009.  Any disputes regarding same will be resolved

at the pretrial conference.  An appropriate order follows.

_s/ Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

Dated: May 8, 2009

cc/ecf:  All Counsel of Record